BEFORE THE THIRD DIVISION, JUNE 14, 1939

No. 41649.—Protest 815545–G of Pacific & Atlantic Steamship Co. (Seattle).

KEEFE, Judge:   The merchandise in question here consists of dunnage mats, 3 feet wide and 5 feet long, composed of straw.   Duty was assessed thereon by the collector at 50 percent ad valorem under section 466 of the Tariff Act of

1930, as equipment of vessels. The plaintiff claims that the assessment of duty is illegal because the mats are not imported articles, nor are they articles falling within the terms "equipments . * * * repair parts or materials to be used" as specified in section 466. The plaintiff further relies upon the claims that if said mats are dutiable under section 466, their cost in Mexican dollars should have been converted into United States dollars at the rate of exchange in effect at the time of purchase, February 2, 1935, or at the rate for that quarterly period, or, if the merchandise is dutiable, it is dutiable as manufactures of straw at 25 percent ad valorem under paragraph 1537.

At the trial the appraiser's report was admitted in evidence. In said report it was stated that the mats in question were composed of straw and not suitable for use as floor coverings. It was also stipulated and agreed that the straw referred to in the appraiser's report relates to straw in the natural state and not to the separated fiber.

The evidence discloses that dunnage mats are used solely on board vessels to separate cargo while in transit and to protect the cargo from becoming wet because of the moisture gathering upon the steel sides and floors of the hold; that dunnage mats are not the regular equipment of vessels and are not needed upon a ship, because dunnage lumber is ordinarily used underneath cargo and against the steel sides of a vessel to protect the cargo. However, dunnage mats are always used for separation of sacks of sugar in the sugar trade in order that the lots from different shippers may be readily segregated and to preserve the sugar from becoming wet.

The evidence further discloses that the dunnage mats had been purchased by an agent of the shipping company in Tientsin, China, on February 2, 1935; that the S. S. *Jefferson Myers* made one trip to Japan during 1935, having proceeded from Longview, Wash., on August 8, 1935, to Yokohama, arriving August 19, remaining there until September 11, and then proceeding to Osaka, Japan, arriving September 12; that the dunnage mats were placed on board the vessel on September 15. The vessel immediately sailed directly for Everett, Wash., arriving October 3, 1935.

The customs official who liquidated the entry testified that in converting the Mexican dollars into United States dollars he used the proclaimed rate for the quarter beginning July 1, 1935, to wit, $0.5637; that it was not his practice to exchange the currency at the rate applicable to the sailing from the second country when merchandise is purchased in one country and laden in another; and that in liquidating the entry in question it was his understanding that the vessel returned to China, so that the exportation occurred during the quarter beginning July 1, 1935.

Counsel for the Government moved to dismiss the protest for the following reasons: First, because the section under which the mats were entered authorizes the Secretary of the Treasury to refund the duty collected under certain circumstances, and no proof was offered to show that the plaintiff attempted to comply with the provisions of said section; second, that the plaintiff entered under the provisions of section 466 voluntarily and is thereby estopped from protesting from its voluntary action.

We find no merit in the Government's motion to dismiss and it is accordingly denied.

The Government contends, first, that dunnage mats are dedicated to the single purpose of protecting cargo on vessels and are not suitable for any other use and therefore come within the definition of equipment, and second, that the plaintiff has failed to prove that the merchandise was exported from China on or about February 2, 1935, and that the proclaimed rate for the quarter beginning July 1, 1935, is applicable in the absence of the date of shipment.

Equipment of vessels is limited to portable things such as furnishings of a ship with any tackle, apparel, furniture, provisions, arms, munitions, or stores, or any other thing that is used in or about a ship for the purpose of fitting or adapting her for the sea, and also to articles to be used in renewal or replacement of articles of original outfit and equipment. Equipment has been held to include portable articles and things necessary or appropriate for the protection or befitting comfort of those on board, considering the service in which the vessel is engaged. See *United States* v. *Admiral Oriental Line,* 18 C. C. P. A. 137, T. D. 44359, and authorities therein cited, and also *Otte* v. *United States,* 7 Ct. Cust. Appls. 166, T. D. 36489, and *Southwestern Shipbuilding Co.* v. *United States,* 13 Ct. Cust. Appls. 74, T. D. 40934. In the latter case the court stated:

As ordinarily understood, the term "outfit and equipment," considered together, includes everything requisite to properly perform a service or to properly accomplish some definite object or purpose.

The vessel here in question was in the sugar trade and the evidence clearly shows that dunnage mats are always used in connection with shipments of sugar. These mats are properly used in the performance of the service of transporting sugar, and, in our opinion, they are of such a nature that their use on board vessels properly accomplishes some definite purpose and therefore come directly within the definition of equipments of vessels.

In respect to the plaintiff's contention that the proclaimed rate for the quarter including February 2, 1935, should be used in converting the currency, we are of the opinion that the rate used by the liquidator in making the conversion is the proper one in the absence of proof of the date when the merchandise was shipped from China. The dunnage mats herein might have been shipped from China after July 1, 1935. The record is silent upon that point. The invoice dated at Tientsin, China, February 2, 1935, cannot be considered as proof of shipment. It is not a consular invoice but merely a bill of sale, carrying with it no presumption that shipment from China was made upon the date thereof.

For the reasons stated, judgment will be entered in favor of the defendant.