(C.D. 2060)

STATES MARINE CORPORATION *v.* UNITED STATES

United States Customs Court, Third Division

(Decided December 24, 1958)

*Tompkins & Tompkins* (*Allerton deC. Tompkins* of counsel) for the plaintiff. *George Cochran Doub*, Assistant Attorney General (*Joseph E. Weil* and *William J. Vitale*, trial attorneys), for the defendant.

Before JOHNSON, DONLON, and RICHARDSON, Judges

JOHNSON, Judge: This is a protest against the collector's assessment of duty at 50 per centum ad valorem under section 466 of the Tariff Act of 1930 as ships' equipment on the cost of 29,000 empty grain bags and the cost of fumigating them. It is claimed that neither the cost of the bags nor the cost of fumigating is dutiable; that the bags do not constitute equipment, but were purchased and used as containers of grain; and that duty should not have been

assessed on the bags under both section 466 and, by virtue of section 446, under paragraph 1018 of said tariff act.

The pertinent provisions of the Tariff Act of 1930 are:

SEC. 466.  EQUIPMENT AND REPAIRS OF VESSELS.

Sections 3114 and 3115 of the Revised Statutes, as amended by the Tariff Act of 1922, are amended to read as follows:

"SEC. 3114.  The equipments, or any part thereof, including boats, purchased for, or the repair parts or materials to be used, or the expenses of repairs made in a foreign country upon a vessel documented under the laws of the United States to engage in the foreign or coasting trade, or a vessel intended to be employed in such trade, shall, on the first arrival of such vessel in any port of the United States, be liable to entry and the payment of an ad valorem duty of 50 per centum on the cost thereof in such foreign country; * * *.

\*　　\*　　\*　　\*　　\*　　\*　　\*

SEC. 446.  SUPPLIES AND STORES RETAINED ON BOARD.

Vessels arriving in the United States from foreign ports may retain on board, without the payment of duty, all coal and other fuel supplies, ships' stores, sea stores, and the legitimate equipment of such vessels.  Any such supplies, ships' stores, sea stores, or equipment landed and delivered from such vessel shall be considered and treated as imported merchandise: * * *.

At the trial, it was stipulated by counsel for the respective parties that the cost of $145 for fumigating was not a cost of equipment or for repair parts or materials to be used upon a vessel.  Consequently, said item is not dutiable under section 466, *supra*, and the protest is sustained to that extent.

Alexander Jessiman Chalmers, vice president of the Pacific-Atlantic Steamship Co., which chartered the vessel involved herein, testified that, according to the records of his firm, including a cargo plan (plaintiff's exhibit 1), the ship sailed from Vancouver, B. C., on November 22, 1947, carrying a full cargo of wheat.  The bulk was stowed in the lower holds and in feeder boxes, and an additional quantity was placed in 29,000 bags and stowed 'tween decks (the deck or space between the lower holds and the main deck).  These bags had been purchased empty by the vessel in Vancouver and were thereafter filled with wheat.  They were used in order to comply with the rules and regulations of the harbor master and the port and for the safety of the vessel, to prevent the grain from shifting during the voyage.  The witness stated:

X Q.  Well, am I correct in understanding that if these bags were not placed on top of the bulk cargo to anchor it down that the cargo may have shifted and caused a loss of the vessel——A.  It could possibly, in bad weather.

X Q.  And possibly the loss of the crew, is that correct?—A.  We are very careful about that.

When the vessel arrived in London, the bags were slit open on board the ship and the grain discharged by suction or in buckets.  This was done because it was cheaper to unload wheat that way.

The empty bags were retained on the ship and were subsequently taken off in New Orleans. They were entered for consumption, under New Orleans consumption entry 1798, dated March 22, 1948, and regular duties were assessed and paid under paragraph 1018 of the Tariff Act of 1930. They were also entered as equipment of vessels purchased in a foreign country and the duty herein complained of was assessed under section 466, *supra*.

The question before us is whether or not the bags were properly assessed with duty under said section 466. That section provides that equipment purchased for a vessel documented under the laws of the United States to engage in foreign trade shall be liable for duty at the rate of 50 per centum ad valorem on the first arrival of such vessel in any port of the United States.

In the instant case, the bags were purchased in Canada and were used to hold a portion of a cargo of wheat while on board the vessel, to prevent it from shifting, thereby promoting the stability and safety of the vessel. Although the bags contained the merchandise during the voyage, they were not used for the purpose of covering or transporting such merchandise but to properly stow it so as not to endanger the ship. It is to be noted that the wheat was not placed in said bags by the shipper, nor was it delivered to the consignee in said bags. The bags cannot be regarded as containers of merchandise, as claimed by the plaintiff, since their real function related to the stowage of the grain and the safety of the vessel.

In *Southwestern Shipbuilding Co.* v. *United States*, 13 Ct. Cust. Appls. 74, T. D. 40934, quoted with approval in *H. E. Warner, Trustee, etc.* v. *United States*, 28 C. C. P. A. (Customs) 143, C. A. D. 136, the court said (pp. 77–78):

> As ordinarily understood, the term "outfit and equipment" considered together, includes everything requisite to properly perform a service or to properly accomplish some definite object or purpose. * * * Taking into account the definition given by the Naval Board and the Treasury Department of "equipment," the several definitions given by the Treasury Department of "outfit and equipment," and the ordinary meaning of that term, we are satisfied that portable articles and things necessary or appropriate for the protection or befitting comfort of those on board, or for the proper navigation or *safety of a vessel*, and not sea stores or a part of the hull or propelling machinery, come within the designation of "outfit and equipment." Furniture and furnishings necessary or suitable to make the vessel habitable and reasonably comfortable for those on board, considering the service in which the vessel is engaged or is to be engaged, things necessary to keep the vessel in order and repair and *to safeguard as far as possible crew and passengers from the perils of the sea* are therefore free of duty under the provisions of paragraph J, subsection 5. [Emphasis supplied.]

In *Pacific & Atlantic Steamship Co.* v. *United States*, 2 Cust. Ct. 761, Abstract 41649, it was held that dunnage mats were equipment dutiable under section 466, the court stating (p. 763):

The vessel here in question was in the sugar trade and the evidence clearly shows that dunnage mats are always used in connection with shipments of sugar. These mats are properly used in the performance of the service of transporting sugar, and, in our opinion, they are of such a nature that their use on board vessels properly accomplishes some definite purpose and therefore come directly within the definition of equipments of vessels.

In *Boland & Cornelius* v. *United States*, 30 Cust. Ct. 481, Abstract 57403, it was held that shifting boards, grain bags, separation cloths, burlap, and tying rope were properly assessed with duty as ships' equipment. These articles had been placed aboard in Canada in connection with a cargo voyage to England in order to insure the safety of the vessel. Although not on board when the vessel later arrived in the United States, they were held subject to duty under section 466, *supra*.

Plaintiff claims, however, that since regular duty was assessed upon the merchandise when it was landed in New Orleans, no duty should be assessed under said section 466. No such exception can be read into that section. It is clearly applicable to all equipments purchased for or repairs made in a foreign country upon a vessel documented under the laws of the United States to engage in the foreign or the coasting trade. Such items are subject to duty whether or not they are ever landed in the United States. *H. C. Gibbs* v. *United States*, 41 C. C. P. A. (Customs) 57, C. A. D. 529; *R. P. Child* (*Pacific-Atlantic Steamship Co.*) v. *United States*, 18 Cust. Ct. 11, C. D. 1037.

In the case last cited, the court stated (p. 16):

Section 466, *supra*, was clearly intended by Congress to be treated entirely separate and apart from section 446, *supra*. Section 466 provides not only that an ad valorem duty shall be placed upon equipment or repair parts or materials to be used on board American vessels in a foreign port, but also that such duty shall be levied and paid upon the expenses of such repairs. The cost of the materials and labor necessary for the erection of the shifting boards and feeder boxes while the *Jefferson Myers* was in the port of Sydney, Australia, is clearly a dutiable item under the law. When the material used in the construction was landed and delivered from the vessel at the port of Philadelphia, such act of delivery brought into operation the provisions of section 466 and thus caused the levy upon the lumber from Australia of additional assessments of duty and tax as would apply to regularly imported merchandise. The tariff act is not designed to levy duty only upon merchandise the product of foreign countries, but provides, title I, section 1, that duty "shall be levied, collected, and paid upon all articles when imported from any foreign country into the United States * * *." Congress, in section 446, brings all articles of equipments discharged from vessels within the foregoing provisions, even though such articles are the product of the United States, and never technically exported therefrom.

We hold, therefore, that the empty grain bags were properly assessed with duty under section 466, *supra*.

The protest is sustained as to the claim that the cost of fumigating the bags is not subject to duty under section 466 of the Tariff Act of 1930 and is overruled as to all other items and in all other respects. Judgment will be rendered accordingly.